# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **HEWITT ASSOCIATES, L.L.C,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. 08 C 3634 |
| | ) |
| | ) |
| **ENRON CREDITORS RECOVERY** | ) |
| **CORP., f/k/a ENRON CORP.** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Enron Creditors Recovery Corp.'s ("Enron") motion to transfer. For the reasons stated below, we grant Enron's motion to transfer.

1

## BACKGROUND

Plaintiff Hewitt Associates LLC ("Hewitt") alleges that in 2001, Hewitt was retained by Enron (at the time known as Enron Corp.) to serve as record keeper for the Enron Corp. Savings Plan ("Savings Plan") and other employee benefit plans ("Plans"). Hewitt alleges that Enron and Hewitt entered into an Administrative Services Agreement ("ASA") which included detailed provisions for the sharing and limitation of responsibility for errors and omissions in connection with work performed by Hewitt.

Hewitt alleges that Enron's financial collapse triggered a barrage of class action lawsuits filed by individual participants of the Plans. According to Hewitt, the class action plaintiffs sought judgments requiring that the Plans' fiduciaries restore the Plans' financial losses. These actions were consolidated in the United States District Court for the Southern District of Texas, and are referred to as the *Tittle* Action. Hewitt states that the class reached settlements with a number of defendants, whereby the defendants agreed to pay money into a settlement trust which would allocate the money according to a "Plan of Allocation" agreed to and negotiated by the parties to the *Tittle* Action. (Compl. Par. 21).

Hewitt alleges that on January 1, 2005, the parties first amended the ASA ("First Amended ASA") to terminate Hewitt's record keeping services, but that the contractual relationship between Hewitt and Enron remained. According to Hewitt, in 2005, Hewitt took on the role of developing a settlement allocation protocol for

the *Tittle* Action settlement. Hewitt alleges that on July 25, 2006, Hewitt and Enron entered into a second amendment to the ASA ("Second Amended ASA") extending the term of Hewitt's services and including its role in connection with the *Tittle* Action allocation protocol. According to Hewitt, its role under the Second Amended ASA was to combine the data for thousands of participants in the Plans to create a unified set of data for the purpose of calculating losses.

Hewitt claims that it subsequently discovered an error in the calculation of losses for certain class members that resulted in certain class members receiving too large of a share of the settlement proceeds. Hewitt alleges that the error resulted in a misallocation of approximately $22 million among the *Tittle* Action class members. According to Hewitt, Enron's estimations indicate that approximately $11.2 million of the $22 million misallocation may not be recoverable. Both Enron and Hewitt allegedly executed loans so that the *Tittle* Action class members who were underpaid could receive just compensation without waiting for the recovery of the overpayments. Hewitt further alleges that these loans were made with Enron and Hewitt reserving their rights under the Second Amended ASA.

On November 30, 2007, Enron allegedly commenced a lawsuit against Hewitt in the United States District Court for the Southern District of Texas, Case No. 07 C 0481 ("Savings Plan Action"). Hewitt alleges that this lawsuit is currently pending and Enron asserts six claims against Hewitt, including various tort claims for negligence, professional negligence, and gross negligence arising from Hewitt's

work on the *Tittle* Action settlement.

Hewitt alleges that Enron refuses to honor its obligations under the Second Amended ASA to indemnify Hewitt for its losses and to defend the Savings Plan's claims. Hewitt brought the instant action, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, asking that the court to (a) determine and adjudicate the rights and liabilities of the parties under the Second Amended ASA, (b) find and declare that Enron is obligated to indemnify Hewitt for all "losses" under the terms of the Second Amended ASA, including all past and future expenses incurred in defense of the Savings Plan's lawsuit and for the unrecovered balance of Hewitt's loan to the Savings Plan, (c) find and declare that Enron is obligated to defend third party claims brought against Hewitt, including the Savings Plan Action pending in the Southern District of Texas, (d) find and declare that Enron is obligated to indemnify Hewitt for damages that Hewitt suffered as a result of Enron's failure to mitigate damages as it claims the Second Amended ASA requires, and (e) award all further relief the court deems equitable and just. Hewitt initially filed its complaint in the Circuit Court of Lake County, Illinois. Enron removed the case to this court, pursuant to 28 U.S.C. § 1441. Enron now moves to transfer this case to the Southern District of Texas pursuant to 28 U.S.C. §1404(a) ("Section 1404(a)").

## LEGAL STANDARD

Pursuant to Section 1404(a), a district court may transfer a civil action to another district if such a transfer is appropriate and if it is done "[f]or the convenience of parties and witnesses, [and] in the interest of justice. . . ." 28 U.S.C. § 1404(a). In order to transfer a case pursuant to Section 1404(a), the transferor court must first find that: (1) venue is proper in the transferor district, and (2) venue is proper in the transferee district. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986); 28 U.S.C. § 1404(a)(stating that transfer can only be made to a district in which the action "might have been brought"). The moving party has the burden of "establishing . . . that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219.

## DISCUSSION

Enron moves to transfer this action, pursuant to Section 1404(a) to the Southern District of Texas. According to Enron, venue and jurisdiction is proper both in the Northern District of Illinois and the Southern District of Texas. Enron argues that the Southern District of Texas is clearly more convenient since: (1) the Southern District of Texas has been presiding over the *Tittle* Action and the settlement funds involved for years, (2) every relevant fact occurred in the Southern District of Texas and every relevant witness is subject to jurisdiction in the Southern District of Texas, and (3) the Southern District of Texas will serve the convenience

of the parties and witnesses and would be in the interest of justice.

I. Venue in Transferor and Transferee Districts

Enron argues, as an initial matter, that venue is proper in both the Northern District of Illinois and the Southern District of Texas. In order for a case to be transferred, the district court must first find that venue is proper in both the transferor district and the transferee district. 28 U.S.C. § 1404(a). Hewitt argues that the basis for federal jurisdiction is diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1), since the amount in controversy exceeds the sum or value of $75,000 and the parties have alleged diversity of citizenship. 28 U.S.C. § 1332(a)(1); (Mot. 10). Furthermore, Enron asserts that venue is proper in both the Northern District of Illinois and the Southern District of Texas since Hewitt's principal place of business is in Lincolnshire, Illinois and Enron's principal place of business is located in the Southern District of Texas. Hewitt has not challenged Enron's assertion that venue is proper in both the potential transferor and potential transferee districts. The court agrees with Enron that venue is proper in both districts. Therefore, Enron has met its first burden under 28 U.S.C. § 1404(a) of showing that venue is proper in the transferor and transferee districts.

II. Most Convenient Forum

The central dispute between Enron and Hewitt relating to the motion to

transfer involves the issue of whether the Southern District of Texas is clearly a more convenient forum than the Northern District of Illinois. If venue is proper in both the transferor and transferee districts, as is the case in the instant action, the transferor court must then consider: (1) the choice of forum by plaintiff, (2) the convenience of the parties, (3) the convenience of the witnesses, and (4) the interest of justice. *Federal Deposit Ins. Corp. v. Citizens Bank and Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 368 (7th Cir. 1979); *Coffey*, 796 F.2d at 220 n.3. The movant bears the burden of establishing that the transferee district is "clearly more convenient." *Coffey*, 796 F.2d at 220.

### A. Hewitt's Choice of Forum

Hewitt argues that, as the Plaintiff in the instant action, its choice of forum is entitled to deference. It is true that, when considering a motion to transfer, the court should "give some weight to the plaintiff's choice of forum." *Federal Deposit Ins. Corp.*, 592 F.2d at 368. Hewitt states that its principal place of business is in Lincolnshire, Illinois and that it has an interest in litigating the instant action in the district where it has its principal place of business. Enron argues that the plaintiff's choice of forum is not a factor that weighs against transfer in this case since Hewitt did not actually choose to file the action in the United States District Court for the Northern District of Illinois, but rather filed the instant action in state court in Lake County, Illinois. Enron argues that because Hewitt chose initially to file in state

7

court, Hewitt's choice of forum "loses its presumptive effect." (Reply 6). We are not convinced by Enron's argument that the United States District Court for the Northern District of Illinois is not Hewitt's choice of forum in the instant action. While Hewitt may have brought the instant action in state court and the action was removed by Enron, clearly after the removal to a United States District Court, Hewitt's choice of forum is the United States District Court for the Northern District of Illinois. Furthermore, Enron has not pointed to any controlling authority that would indicate that, by filing an action in state court, the plaintiff loses the right to argue that the removal court is its choice of forum.

A plaintiff's choice of forum is given less weight when another forum has a stronger relationship to the dispute. As is discussed further below, Enron has shown that the Southern District of Texas has a much stronger connection to the dispute and the remaining factors heavily outweigh Hewitt's choice of forum.

Finally, we note that this is an action in which Hewitt is solely seeking declaratory relief and that Hewitt is not the natural plaintiff with respect to the instant controversy. District courts are afforded "'wide discretion' to decline to hear actions that pursue only declaratory relief." *Newell Operating Co.*, 2008 WL 2600795, at *6 (quoting in part *North Shore Gas Co. v. Salomon Inc.*, 152 F.3d 642, 647 (7th Cir. 1998)). In deciding whether to decline to hear such cases, a court should consider the "wisdom of allowing litigation to go forward in the" district court and consider which parties are the "natural plaintiffs." *Newell Operating Co.*, 2008 WL 2600795,

8


at *7.  The Seventh Circuit has indicated that a court should be "wary of a declaratory-judgment action that is 'aimed solely at wresting the choice of forum from the natural plaintiff.'"  *Id.* (quoting in part *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002)).  In this case, the natural plaintiff is clearly Enron as is demonstrated by the posture of the Savings Plan Action brought by Enron against Hewitt in the Southern District of Texas.  Thus, although Hewitt's choice of forum is the Northern District of Illinois, this is not a factor that weighs heavily against transfer in the instant action.

### B. Convenience of the Parties and the Witnesses

Enron points to compelling evidence to indicate that the Southern District of Texas is a much more convenient forum for both the parties and witnesses.  With respect to the parties, Enron's principal place of business is in Texas. While Hewitt lists its principal place of business in Illinois, Enron points out that Hewitt operates a large facility located in The Woodlands, Texas, which is within the Southern District of Texas.  Enron and Hewitt have been conducting business within the Southern District of Texas since the formation of the ASA.  Hewitt's presence in the Southern District of Texas minimizes any inconvenience it would suffer were it to have to litigate this matter in the Southern District of Texas.  Furthermore, as Enron points out, Hewitt has been appearing on related litigation in the Southern District of Texas for quite some time.   The very subject of Enron's and Hewitt's business relationship

after the formation of the Second Amended ASA was the *Tittle* Action, an ongoing piece of litigation in the Southern District of Texas. Enron and Hewitt have also been litigating the Savings Plan Action against Hewitt in connection with the alleged misallocation by Hewitt of the *Tittle* Action proceeds for nearly a year. Thus, Hewitt would not be strongly inconvenienced if the instant action was litigated in the Southern District of Texas. In contrast, there is no indication from either party that Enron has a connection to the Northern District of Illinois that might limit its inconvenience if the action proceeded in the instant forum. Thus, the interests of the parties weighs in favor of transfer.

The interests of witnesses factor also weighs strongly in favor of transfer to the Southern District of Texas. Enron has pointed to evidence, which has not been contradicted by Hewitt, which indicates that the vast majority of the employees for both Hewitt and Enron who were involved in the formation of the ASA, the First Amended ASA, the Second Amended ASA, as well as the implementation of these agreements are located in the Southern District of Texas. In fact, Enron has represented to the court that all but one of the current and former Enron employees with knowledge of the negotiation of the ASA and the Amendment to the ASA reside in or near Houston, Texas. Furthermore, according to Enron, the Hewitt employees dedicated to providing services for Enron were almost exclusively located in Texas and operated out of the Hewitt facility in The Woodlands, Texas.

Hewitt has offered no evidence to contradict Enron's assertions with respect to

the location of a substantial number of witnesses. The only key witness that Hewitt cites who is not located in Houston is an Enron employee who is incarcerated in federal prison in Arkansas. (Ans. 9). Hewitt has not shown that this particular witness would be more available in the Northern District of Illinois than in the Southern District of Texas. Hewitt even concedes that the central Hewitt witnesses who would be in a position to testify regarding the misappropriation that has precipitated the instant action are "split between Atlanta and Houston." (Ans. 8.)

  Rather than pointing to evidence that would establish that the instant action has some connection to the Northern District of Illinois, Hewitt relies mainly on the argument that Enron has not done enough, in its motion, to specifically identify the potential witnesses who reside outside of the Northern District of Illinois. However, Enron has provided evidence in the form of a declaration of Robert W. Jones, who identifies specific employees located in Houston, who were involved in the creation of the ASA, the Amendments to the ASA and the authorization of Hewitt to participate in the plan of allocation. (Mot. Ex. 3). Hewitt argues that Enron has still not done enough to show that the convenience of the parties favors the Southern District of Texas. We disagree. Enron has shown that the convenience of the witnesses factor weighs strongly in favor of transfer to the Southern District of Texas. Since the convenience of the parties and the convenience of the witnesses are both factors that weigh significantly in favor of transfer, it is also clear that the private interests as a whole substantially favor transfer. While Hewitt's choice of

forum is entitled to some deference, that factor is significantly outweighed by the convenience of the parties and witnesses.

### C. Interest of Justice

The final factor to be considered when considering a transfer under Section 1404(a) is whether the interest of justice weighs in favor of a transfer. In determining whether the interest of justice supports transferring a case, a court may consider: (1) whether a transfer promotes the "efficient administration of justice," (2) whether the action could be consolidated with other actions in the transferee district, (3) whether the judges in the transferee district are more familiar with the pertinent state law, (4) whether jurors in a particular district have a "financial interest in [the] case," and (5) which district would have jurors that could "best apply community standards." *Coffey*, 796 F.2d at 220-21 n.4. The court should also consider whether the transferee district has a lighter docket than the transferor district. *In re Nat'l Presto Indus., Inc.*, 347 F.3d at 663.

Enron points out that there are three related matters that are currently pending in the Southern District of Texas. The first matter is the *Tittle* Action. The *Tittle* Action is the litigation out of which the relationship between Hewitt and Enron arose under the Second Amended ASA. Hewitt does not dispute the fact that the court in the *Tittle* Action explicitly retained jurisdiction over the administration of the settlement. The second matter is the Savings Plan Action filed by Enron against

12

Hewitt arising out of Hewitt's alleged misallocation of the *Tittle* Action proceeds and is the precise action for which Hewitt now seeks indemnification. The Savings Plan Action was filed in November 2007, has been consolidated with the *Tittle* Action, and is pending in the Southern District of Texas. Hewitt argues that it has filed a motion to dismiss the Savings Plan Action for lack of subject matter jurisdiction. However, we note that there has been no ruling by the court in the Savings Plan Action that the Southern District of Texas lacks subject matter jurisdiction over the Savings Plan Action. The third related action is a mirror action for declaratory judgment, brought by Enron in the Southern District of Texas. Hewitt argues that this third action should not be considered in favor of transfer since it was filed after Hewitt filed the instant action in Illinois state court. However, as Enron points out, both the instant action and Enron's mirror action appear to be intertwined with Enron's substantive suit against Hewitt as well as the *Tittle* Action, both of which were filed well before Hewitt brought the instant action in Illinois state court. Enron's position that the instant action is intertwined with the pending litigation in the Southern District of Texas is supported by the fact that the District Court in the Southern District of Texas has consolidated Enron's mirror declaratory judgment action and Enron's substantive lawsuit against Hewitt with the *Tittle* Action.

It is clear from the representations of the parties that the Southern District of Texas has greater familiarity with the precise issues involved in the instant action. As Enron points out, Hewitt and Enron have been appearing in the Southern District

13

of Texas regarding Hewitt's alleged misallocation of the *Tittle* Action proceeds. As an additional point, the ASA, which is the focal point of the instant action for declaratory judgment, is governed under Texas law and, as such, would be more appropriately handled by federal judges in the state of Texas who deal with matters involving Texas law on a regular basis.

As with the factors relating to the private interests of the parties, Hewitt has not shown that the interest of justice in any way favors maintaining the instant action in the Northern District of Illinois. Hewitt simply argues that Enron has not met its burden of showing that the instant action is clearly more appropriate to be litigated in the Southern District of Texas. However, Enron has successfully shown that the instant action involves an agreement that was (1) formed by parties with a substantial presence in the Southern District of Texas, (2) negotiated and administered by employees largely located in the Southern District of Texas, (3) for services to be rendered largely in the Southern District of Texas, (4) based on a litigation pending in the Southern District of Texas, and (5) governed under the laws of the state of Texas. The convenience of the parties, the convenience of the witnesses, and the interest of justice are all factors that outweigh Hewitt's choice of forum in this case. Thus, Enron has met its burden of demonstrating that the Southern District of Texas would be a clearly more convenient forum. Therefore, we grant Enron's motion to transfer.

## CONCLUSION

Therefore, based on the foregoing analysis, we grant Enron's motion to transfer.

 

 

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   August 20, 2008